# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:15-cr-427-SI |
| v. | **OPINION AND ORDER ON PRETRIAL MOTIONS** |
| **HARRY DEAN PROUDFOOT III**, | |
| Defendant. | |

Billy J. Williams, United States Attorney, and Scott E. Bradford and John C. Brassell, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for the United States of America.

Robert B. Hamilton and Bryan Francesconi, Assistant Federal Public Defenders, OFFICE OF THE FEDERAL PUBLIC DEFENDER, 101 SW Main Street, Suite 1700, Portland, OR 97204. Of Attorneys for Defendant Harry Dean Proudfoot III.

**Michael H. Simon, District Judge.**

Defendant Harry Dean Proudfoot III ("Defendant" or "Proudfoot") is charged in a 15-count indictment (ECF 1-1) with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, five counts of wire fraud in violation of 18 U.S.C. § 1343, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and eight counts of

money laundering in violation of 18 U.S.C. § 1957.[1] A ten-day jury trial is scheduled to begin on December 3, 2018.[2] On November 26, 2018, the Court held a pretrial conference to address the parties' respective motions *in limine* and other pretrial matters. This Opinion and Order addresses the Government's motion *in limine* (ECF 78), Defendant's motions *in limine* (ECF 131),[3] and Defendant's motion for reconsideration (ECF 126).

## BACKGROUND

The Government alleges that in 2008, Defendant created 3 Eagles Research and Development, LLC ("Three Eagles") and that from 2008 through 2012 Defendant and others (including several of Defendant's adult children) used Three Eagles to solicit investments in a purported gold mining operation in Ohio. According to the Government, Defendant and his co-conspirators and co-schemers obtained approximately $3.2 million from approximately 140 investors based on materially false promises and other false or misleading representations and omissions. Among other things, Defendant and his alleged co-conspirators and co-schemers allegedly made false promises that they would use the investors' money to purchase mining equipment and conduct mining operations at two gravel pits in Ohio, falsely promised high rates of return (typically 10 percent of gross revenues payable after the mine became operational), falsely claimed that Defendant had secured two properties in Ohio totaling 300 acres from which Three

---

[1] The indictment also charges Defendant's adult son Matthew Proudfoot with these same offenses. On December 18, 2017, the Court accepted Matthew Proudfoot's plea of guilty to Count 1 (conspiracy to commit wire fraud) and Count 14 (money laundering), pursuant to a plea agreement. The Court has not yet sentenced Matthew Proudfoot.

[2] An earlier trial in this case began on January 8, 2018, but was not completed due to health issues involving Defendant's then-counsel. On January 16, 2018, the Court granted Defendant's motion for mistrial (ECF 110).

[3] The Court construes Defendant's motions *in limine* filed on November 19, 2018 (ECF 131) as superseding Defendant's motions *in limine* filed on December 21, 2017 (ECF 81).

Eagles would extract gold (when, in fact, Defendant had only obtained a lease for one property consisting of 204 acres), falsely claimed that Three Eagles already had obtained all necessary contracts to conduct the described gold mining operation in Ohio, and falsely stated that Three Eagles had hired an "expert geological miner" (when, in fact, that person was only an amateur prospector).

In addition, Defendant and his co-conspirators and co-schemers allegedly encouraged investors to invest as much money as they could in the Ohio gold mining project and sent periodic updates to the investors containing allegedly false statements representing that the mining operation was progressing. According to the Government, however, the Ohio gold mining project had never progressed beyond merely acquiring soil samples from the proposed mining site. Further, rather than use the investors' money as Defendant and his alleged co-conspirators and co-schemers had promised, Defendant and several of his adult children allegedly used the investors' money to pay their personal expenses.

The Government also alleges that Defendant intentionally failed to disclose to investors the following allegedly material facts:

> (a)     In 1991, the State of Alaska served a Cease and Desist Order on Defendant for selling unregistered securities through material misrepresentations;
>
> (b)     In 1993, the State of Oregon served a Cease and Desist Order on Defendant for selling unregistered securities through material misrepresentations;
>
> (c)     In 2003, the State of Oregon served a Cease and Desist Order on Defendant for selling unregistered securities through material misrepresentations;
>
> (d)     In August 2010, alleged co-conspirator Matthew Proudfoot filed for personal bankruptcy; and

<blockquote>
(e)     In 2013, the State of Oregon served a Cease and Desist Order on Defendant for selling unregistered securities from 2004-2007 for a gold mining operation in Canada.
</blockquote>

## DISCUSSION

### A.     Government's Motion *in Limine* (ECF 78)

The Government moves *in limine* to exclude evidence or argument related to Defendant's intent or ability to repay the victims of the alleged fraud, including any expert testimony or argument about the viability of the purported gold mining scheme. ECF 78. The Ninth Circuit has held that a defendant's intent or ability to repay the victims of fraud is not a defense to charges of criminal fraud. *See United States v. Treadwell*, 593 F.3d 990, 997 (9th Cir. 2010) ("The intent to induce one's victim to give up his or her property on the basis of an intentional misrepresentation causes 'harm' by depriving the victim of the opportunity to weigh the true benefits and risks of the transaction, regardless of whether or not the victim will suffer the permanent loss of money or property."); *United States v. Oren*, 893 F.2d 1057, 1062 (9th Cir. 1990) ("[O]ne defrauds another when he causes him to be 'deprive[d] . . . of property by means of false . . . representations.'") (*quoting Carpenter v. United States*, 484 U.S. 19, 27 (1987) (alteration in original)); *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986) ("While an honest, good-faith belief in the truth of the misrepresentations may negate intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no defense at all."). Similarly, in *United States v. Molinaro*, 11 F.3d 853 (9th Cir. 1993), the Ninth Circuit approved the following jury instruction in a criminal case alleging bank fraud:

<blockquote>
You may determine whether a defendant had an honest, good faith belief in the truth of the specific misrepresentations alleged in the indictment in determining whether or not the defendant acted with intent to defraud. However, a defendant's belief that the victims of the fraud will be paid in the future or will sustain no economic loss is no defense to the crime.
</blockquote>

*Molinaro*, 11 F.3d at 863. In Defendant's Response, Defendant did not oppose the Government's motion *in limine*. ECF 91. Accordingly, the Government's motion *in limine* (ECF 78) is granted.

**B.     Defendant's Motions *in Limine* (ECF 131)**

Defendant moves *in limine* to exclude evidence or argument on twelve matters. Each is addressed in turn.

### 1.   Defendant's SEC deposition testimony on March 28, 2018

At some point before October 2011, the U.S. Securities and Exchange Commission ("SEC") began an investigation of Three Eagles, Defendant, and others relating to whether they were selling securities in violation of federal securities laws. On October 18, 2011, the SEC sent Defendant a letter and deposition subpoena as part of its civil investigation and attached the SEC's "Form 1662." This form advises deposition witnesses of their Fifth Amendment rights and that any information they provide in a deposition may be used against them in a criminal proceeding. *See* ECF 90-1 (SEC Form 1662).

On March 13, 2012, Defendant appeared with his counsel for the subpoenaed deposition, which was taken by an attorney from the SEC. Before providing any testimony, Defendant acknowledged that he had reviewed the SEC's Form 1662 and had no questions about the content of that form. Defendant was represented by counsel at that deposition. At the end of the deposition, the SEC attorney explained there likely would be another required deposition of Defendant, and the SEC attorney provided Defendant and his attorney with an opportunity to ask questions or clarify any issues. Neither Defendant nor his counsel asked any questions about Form 1662, the use of Defendant's deposition, or whether there was a parallel criminal investigation.

On July 17, 2012, the SEC filed a complaint in the U.S. District Court in Portland, Oregon, alleging that Three Eagles, Defendant, Defendant's son Matthew Proudfoot,

Defendant's daughter Laurie Vrvilo, and another person sold securities in violation of federal securities laws. *Securities and Exchange Commission v. 3 Eagles Research & Development, LLC, et al.*, Case No. 12-cv-01289-ST (D. Or.) (the "SEC Case"). On March 28, 2013, the SEC deposed Defendant a second time. Defendant appeared for this deposition without counsel. The attorneys for the SEC did not send another copy of Form 1662 to Defendant in advance of the second deposition and did not discuss that form with Defendant at the second deposition.

Defendant moves *in limine* to exclude the statements that he made during his second deposition, taken on March 28, 2013. Defendant argues that the use of these statements from his second deposition would violate his Fifth Amendment privilege against self-incrimination and his due process rights. Defendant asserts that a second copy of the SEC's Form 1662 was not provided to him, or even referenced, before or during his March 28, 2013 deposition, which was taken after the SEC Case had been filed and more than a year after the SEC took Defendant's first deposition in March 2012. Defendant also states that he was not represented by counsel during his second deposition, taken on March 28, 2013. Further, Defendant represents that the SEC did not warn him at the beginning of his deposition on March 28, 2013, as they did the year before, that any statements he may make could be used against him in a criminal proceeding. Thus, according to Defendant, at his second deposition he did not knowingly and intelligently waive his Fifth Amendment privilege against self-incrimination, and his March 2013 deposition testimony should be excluded from any criminal trial against him.

Both sides refer the Court to the Ninth Circuit's decision in *United States v. Stringer*, 535 F.3d 929 (9th Cir. 2008). In that case, the Ninth Circuit noted that "[t]he Supreme Court has held that the government may conduct parallel civil and criminal investigations without violating the

due process clause, so long as it does not act in bad faith." *Id*. at 936. Proudfoot, however, offers

no evidence of any bad faith by the Government.

Further, as explained by the Ninth Circuit in *Stringer*:

> The privilege against self-incrimination protects an individual from
> being forced to provide information that might establish a direct
> link in a chain of evidence leading to his conviction. *Hoffman v.
> United States*, 341 U.S. 479, 486 (1951). It may be waived if it is
> not affirmatively invoked. In *Minnesota v. Murphy*, the Supreme
> Court stressed that the privilege is lost if not affirmatively invoked,
> even if the defendant did not make a knowing and intelligent
> waiver. 465 U.S. 420, 428 (1984). We have similarly stated that a
> "defendant's failure to invoke the privilege against self-
> incrimination waives a later claim of privilege." *Unruh*, 855 F.2d
> at 1374 (holding that a defendant waived the privilege when, after
> being advised of his right not to answer questions, he proceeded to
> testify in a civil deposition).

*Id*. at 938. In *Stringer*, the district court dismissed the Government's indictment and held that the

defendants' waivers of their Fifth Amendment privilege against self-incrimination were

ineffective because the defendants were not told of the U.S. Attorney's active involvement in a

parallel SEC investigation. In reversing the district court, the Ninth Circuit explained:

> The SEC Form 1662 used in this case alerts SEC investigative
> witnesses that the information can be used in a criminal
> proceeding. Defendants were on sufficient notice, and so were
> their attorneys. As one federal court has explained, all that was
> required was "sufficient notice . . . that any information could be
> used against [them] in a subsequent criminal proceeding." *United
> States v. Teyibo*, 877 F. Supp. 846, 855 (S.D.N.Y.1995). That court
> emphasized that "SEC Form 1662 stated in no uncertain terms that
> the [g]overnment's request for information could be refused
> pursuant to the Fifth Amendment's protection against compelled
> self-incrimination." *Id*. We agree.
>
> The SEC here went even further, warning each defendant at the
> beginning of each deposition that "the facts developed in this
> investigation might constitute violations of . . . criminal laws."
> Nonetheless, defendants proceeded to testify and failed to invoke
> their privilege against self-incrimination. Defendants have
> forfeited any claims that the use of their testimony against them in

the criminal proceedings violates the privilege against self-incrimination.

*Id.*

In the pending case, Defendant asserts that he did not have the benefit of counsel at his second deposition, that a second Form 1662 was not sent to him by the SEC before his second deposition, and that the SEC attorney at the second deposition did not begin that deposition by asking whether Defendant had again reviewed the Form 1662 or repeating the warning that Defendant's statements at this civil deposition could be used against him in a criminal proceeding. The Court accepts these factual assertions as true. Nevertheless, all of this information was given to Defendant at or before his first deposition taken by the SEC approximately one year earlier, and the SEC stated at the first deposition that another deposition likely would be required from Defendant. Nothing in *Stringer* requires the exclusion in this criminal trial of Defendant's statements made during his civil deposition taken by the SEC on March 28, 2013. Further, the parties have not presented to the Court any case law that requires such exclusion. The Court finds that Defendant's statements were made knowingly and voluntarily. Accordingly, Defendant's motion *in limine* to exclude his civil deposition testimony given to the SEC on March 28, 2013, is denied.

### 2. Conrad Lysiak's SEC deposition testimony on March 25, 2013

On March 25, 2013, in the SEC case, the SEC took the deposition of attorney Conrad Lysiak, who passed away in 2017. Mr. Lysiak previously served as securities counsel for Three Eagles, and he did not assert the attorney-client privilege during his deposition. Also, Defendant, who was *pro se* at the time, was not present at the SEC's deposition of Mr. Lysiak, although Defendant had the opportunity to attend that deposition.

Defendant moves to exclude the deposition testimony of Mr. Lysiak, relying on both the Confrontation Clause of the Sixth Amendment and Rule 804(b)(1)(B) of the Federal Rules of Evidence. Regarding that hearsay exception for former testimony, Defendant argues that he did not have a "similar motive" to develop through cross-examination Mr. Lysiak's testimony in the SEC Case that Defendant now has in this criminal prosecution. In response, the Government states that it "does not currently plan to exhibit any of Mr. Lysiak's deposition testimony at the upcoming trial, although that may change if defendant asserts a reliance [on counsel] defense." ECF 90 at 5. Accordingly, there is no need for the Court to rule on this issue at this time.[4]

### 3. Purported hearsay statements in correspondence by Conrad Lysiak

Defendant objects to certain written correspondence between Defendant and the attorney for Three Eagles, Mr. Lysiak. The Government argues that Defendant's statements are

---

[4] In the Government's Response to Defendant's Motion *in Limine* filed on November 26, 2018, the Government states: "At the January 4, 2018, pretrial conference, the Court ruled that Mr. Lysiak's testimony could be introduced on rebuttal as statements of a party opponent. Tr. 51-53 (01/04/2018)." ECF 134 at 4. The Government has misunderstood the Court's earlier ruling. In the portion of the January 4, 2018 pretrial conference that the Government cites, the Court was discussing the "e-mail communications and any other correspondence between Mr. Lysiak and the defendant." Tr. 52 (01/04/2018). In that context, Defendant's own statements in e-mail communications and other correspondence with Mr. Lysiak are, of course, admissible as statements of a party opponent, and Mr. Lysiak's statements may be admissible to provide context or meaning to Defendant's statements. If the Government intends to offer Mr. Lysiak's own SEC deposition testimony as a statement of a party opponent, however, the Government will need to satisfy the requirements of Rule 801(d)(2)(C) or (D).

The Government states that in rebuttal it may attempt, under Rule 804(b)(1)(B), to offer Mr. Lysiak's former testimony at the SEC deposition regarding what Defendant said to Mr. Lysiak. Rule 805, which addresses hearsay within hearsay, will likely not present a barrier, at least to the extent that Mr. Lysiak is relating what Defendant told him. This second level of out-of-court statement would be a statement by a party opponent. Whether the Government can satisfy the "similar motive" requirement under Rule 804(b)(1)(B) and any issue under the confrontation clause, however, is another matter. The Government also states that in rebuttal it may attempt to offer Mr. Lysiak's SEC deposition testimony for a purpose other than to establish the truth of the matter asserted. The Court reserves ruling on all of these issues until they arise at trial.

statements of a party opponent and thus admissible under Rule 801(d)(2) of the Federal Rules of Evidence and that Attorney Lysiak's statements are admissible for the limited purpose of providing context for Defendant's statements. Defendant argues that the Government is merely attempting to introduce Attorney Lysiak's statements to show the jury the attorney's legal advice that was given to Three Eagles. The Court reserves ruling on this issue until after the Government has had an opportunity to show the relevance and context of the disputed statements.

### 4. Victim impact evidence

Defendant objects to what it calls "victim impact" evidence. The Government may not elicit testimony or otherwise present evidence about the effect on the alleged victims caused by Defendant's alleged actions, other than the specific amounts of investment loss actually suffered.

### 5. Religious beliefs

Defendant moves to exclude all evidence regarding Defendant's religious beliefs as irrelevant. The Government states that it will not introduce any evidence that Defendant's professed religious beliefs are insincere or not genuinely held. The Government, however, seeks to introduce evidence that Defendant intentionally discussed his religious beliefs with prospective investors who held similar religious beliefs to make these prospective investors more likely to trust Defendant and give him their money. Such evidence is permissible. *See United States v. Turner*, 400 F.3d 491, 494-95 (9th Cir. 2005) ("Nevertheless, [the defendant] worked hard in creating an image of legitimacy. For example, he created a database of the investors to facilitate communication between the investors (more properly, victims) and himself. Later, he set up a recorded message hotline to keep investors up to date on the status of Omega. The status of Omega was always the same; pay-out was just around the bend. Other written communications stated the same, often times including religious references and biblical

quotations."); *United States v. Dazey*, 403 F.3d 1147, 1157-58 (10th Cir. 2005) ("[The

defendant's] sales pitch routinely exploited investors' religious convictions. Dr. Craft was

portrayed as a devout Christian and humanitarian, while Mr. Dazey and Mr. Mathew were said to

be active ministers. Some investors entrusted funds to Wealth-Mart based on its principals'

religious bona fides and were attracted to the program in part because they were told their money

would be used to advance charitable causes.").

The Court also has considered Defendant's objection under Rule 403 and has concluded

that the probative value of the Government's evidence is not substantially outweighed by the

danger of unfair prejudice. The Court, however, will instruct the jurors that they may not

consider a defendant's religious beliefs in deciding whether the Government has met its burden

of proving all of the essential elements of any charge beyond a reasonable doubt and that all

persons are equal before the law.

### 6. Details of personal expenditures

Defendant moves to exclude evidence of how Defendant and his adult children spent the

money they obtained from the investors in Three Eagles. The Government alleges that much of

the investors' money was used for the personal expenses of Defendant and his adult children, the

alleged co-conspirators and co-schemers. This is relevant to show, among other things, whether

the money taken out of Three Eagles by Defendant and his alleged co-conspirators was treated as

a "loan." The Government will be allowed to present this evidence. *See United States v. Cohen*,

539 F. App'x 743, 745 (9th Cir. 2013) ("The district court did not abuse its discretion by

admitting evidence about [the defendant's] lavish lifestyle because a description of his lifestyle

was probative of the manner in which [the defendant] conducted his scheme and relevant to

whether the money he received was an investment, a loan, or funds he spent rather than funds he

intended to repay.) The Court, however, is mindful that the line between probative evidence and

unfair prejudice in this context may be thin. *See United States v. Unruh*, 855 F.2d 1363, 1376-77 (9th Cir. 1987). The Court reserves ruling on any specific items of evidence relating to personal expenditures and will rule on any objections that are timely made at trial.

### 7. Absence of Defendant's tax records (Ruling Reserved)

Defendant moves to exclude evidence showing the absence of tax filings for Defendant and Three Eagles for the years 2009 through 2012. At various times, Defendant characterized the money that he took from Three Eagles as "loans" and at other times he characterized that money as "income." According to the Government, Defendant made these inconsistent statements to the SEC during his depositions and to the FBI during his interviews. The Government explains that Defendant's failure to file tax returns is relevant to show that Defendant acted with fraudulent intent and knowledge of illegal activity. *See United States v. Lloyd*, 807 F.3d 1128, 1159 (9th Cir. 2015) ("evidence of fraudulent tax returns [was] admitted to show knowledge of illegal activity"); *see also United States v. Fuchs*, 218 F.3d 957, 965 (9th Cir. 2000). The Government also notes that this evidence is needed for the Government to present a coherent and comprehensible story regarding the commission of the alleged crimes. The Court agrees. The Court also has considered Defendant's objection under Rule 403 and has concluded that the probative value of the Government's evidence is not substantially outweighed by the danger of unfair prejudice. If this evidence is received, however, the jury will be instructed that Defendant is on trial only for the specific crimes charged.

At the pretrial conference, Defendant also argued that the Government's proposed proof by affidavit of the absence of Defendant's tax filings would violate Defendant's rights under the confrontation clause, as interpreted by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2004). Both sides have asked for additional time to brief that issue, which the Court allowed. Accordingly, the Court reserves ruling on this matter.

### 8. Matthew Proudfoot's Plea and Cooperation Agreements

The Government anticipates calling Matthew Proudfoot in the Government's case and has marked as trial exhibits Matthew Proudfoot's Plea Agreement and Cooperation Agreement. (Trial Exs. 276 and 277.) Defendant moves to exclude these exhibits as improper vouching. Defendant refers the Court to *United States v. Monroe*, 943 F.2d 1007 (9th Cir. 1991). Both the Defendant and the Government refer the Court to *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981). In *Monroe*, the Ninth Circuit found no error in the district court allowing the Government on direct examination to introduce a witness's "truthful testimony requirement" contained in his plea agreement after the defense attacked the witness's credibility in opening statement. *Monroe*, 943 F.2d at 1013-14. Similarly, in *Halbert*, the Ninth Circuit stated, "the guilty plea or conviction of a codefendant may not be offered by the government and received over objection as substantive evidence of the guilt of those on trial. While the evidence may not be used to establish a defendant's guilt, it may properly be considered by the jury in evaluating witness credibility."

Following this guidance, the Government may elicit during the direct examination of Matthew Proudfoot the fact that he has pleaded guilty to certain charges so that the jury may consider this evidence in evaluating the credibility of this witness. The Government may not, however, present the specific requirement to tell the truth that is contained in the witness's plea agreement or cooperation agreement, unless and until Defendant has attacked the credibility of this witness, which may occur during Defendant's opening statement. Upon request by Defendant, the Court will give an appropriate limiting instruction.

### 9. Testimony by Norm Stadeli

Defendant moves to exclude evidence that Norm Stadeli invested in other mining ventures with Defendant before investing in Three Eagles and that Defendant caused Three

Eagles to pay Norm Stadeli a total of $15,000 from other investors in Three Eagles, presumably to show a return on some of his earlier investments in the other Proudfoot ventures. This testimony is relevant and not substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury.

### 10. Testimony by Eric Stadeli

Defendant moves to exclude evidence that Eric Stadeli invested $50,000 with Defendant in March 2008 in the form of a promissory note, while Three Eagles was exploring a site in Nevada. Defendant did not repay Eric Stadeli on his promissory note. Instead, after Three Eagles moved to Ohio for its purported gold mining operation, Three Eagles revised Eric Stadeli's promissory note to reflect that now $100,000 was owed to him by Three Eagles, rather than merely $50,000. This testimony is relevant to show that Three Eagles incurred debt for a project unrelated to its mining operation in Ohio and is not substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury.

### 11. Three Eagle's regulatory compliance after Defendant left management

On October 11, 2011, the SEC issued a subpoena to Three Eagles. Approximately two months later, in mid-December 2011, Defendant formally resigned from being an officer and director of Three Eagles and instead began a relationship with Three Eagles as a "consultant." In later 2011 and early 2012, Three Eagles sent several pieces of correspondence to investors, purportedly to comply with regulatory requirements. The Government contends that some of this correspondence contains admissions and misstatements that are admissible against Defendant as statements made by a co-conspirator.

Defendant moves to exclude all statements made by anyone at Three Eagles after Defendant resigned from being an officer and director. The Court reserves ruling on any specific items of evidence relating to this issue and will rule on any objections that are timely made at

trial. Specifically, the Court will evaluate the evidence to determine whether these statements were made by a co-conspirator in furtherance of the alleged conspiracy, during the existence of the alleged conspiracy, and while Defendant was still a member of the alleged conspiracy. *See* Fed. R. Evid. 801(d)(2)(E.).

### 12. Government's summary evidence under Rule 1006

Defendant objects to several summary exhibits that the Government intends to present under Rule 1006 of the Federal Rules of Evidence through its witness IRS Special Agent Katherine Fearn. Defendant objects to four specific items.

#### a. Trial Ex. 266 (2008 Column)

Defendant objects to the entire column for the year 2008. According to Defendant, this chart purports to summarize the "[d]isposition of investor funds." According to Defendant, the Ohio mining site was discovered in late 2009, and investor funds before that time were not gathered pursuant to the manner and means of the scheme to defraud alleged in the indictment. Defendant also argues that the disposition of monies in 2008 is irrelevant. The Government responds that this evidence is relevant because it provides the jury with a complete picture of the money flow for Three Eagles. The Court agrees with the Government. Further, the probative value of this evidence is not substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury.

#### b. Trial Ex. 266 ("Other Harry Proudfoot Ventures")

Defendant objects that creating a category entitled "Other Harry Proudfoot Ventures" goes beyond what is permissible in a summary exhibit. The Government proposes renaming this section "Other Harry Proudfoot Owned Accounts." That is acceptable to the Court. Further, the probative value of this evidence is not substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury.

### c. Trial Ex. 267

Defendant objects to the inclusion in this document of accounts that do not involve Three Eagles. The Government responds that these early bank account provide a complete picture of Defendant and his alleged co-conspirators' financial activities in the time period surrounding Three Eagles. According to the Government, they also show that Defendant transferred nominal amounts of money from Three Eagles to other Defendant-controlled bank accounts. This is relevant evidence. Further, the probative value of this evidence is not substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury.

### d. Trial Ex. 268

Defendant objects to the title of this document, "1006 Summary—Money Laundering Analysis." Defendant objects to a "prejudicial and conclusory caption." The Government proposes to title this exhibit: "1006 Summary—Money Flow Analysis." The problem, however, is with the word "analysis." Because Rule 1006 refers to summaries and not analyses, the Government shall change the title of this document to delete the word "analysis." The title "1006 Summary—Money Flow" is acceptable to the Court.

## C. Defendant's Motion for Reconsideration (ECF 126)

### 1. Background

At the pretrial conference held on January 4, 2018, shortly before the first trial in this case began, as well as on the morning of the first day of trial, January 8, 2018, the parties presented arguments to the Court regarding whether evidence relating to the following matters is admissible: (a) Defendant's failure to disclose to investors that a cease and desist order had been served on Defendant by the State of Alaska in 1991 for selling unregistered securities through material misrepresentations; (b) Defendant's failure to disclose to investors that a cease and desist order had been served on Defendant by the State of Oregon in 1993 for selling unregistered securities

through material misrepresentations; (c) Defendant's failure to disclose to investors that a cease and desist order had been served on Defendant by the State of Oregon in 2003 for selling unregistered securities through material misrepresentations; (d) Defendant's failure to disclose to investors that in August 2010 Matthew Proudfoot had filed for personal bankruptcy; and (e) Defendant's failure to disclose to investors that a cease and desist order had been served on Defendant by the State of Oregon in 2013 for selling unregistered securities from 2004-2007 for a gold mining operation in Canada.

Before the first trial began, the Court made several rulings relating to these issues. Some were in favor of the Government, and some were in favor of Defendant. The Court also explained that these pretrial rulings were subject to reconsideration as the evidence developed at trial. Defendant now seeks reconsideration, based in part of the actual testimony presented during the first trial. In addition, regarding any interlocutory order issued by a district court, the Ninth Circuit has stated: "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (citation omitted). Defendant's motion for reconsideration is granted in part and denied in part as stated below. In addition, to assist the parties (and the Court) at the second trial, the Court will discuss all five contested issues, regardless of whether they were expressly raised in Defendant's motion for reconsideration.

### 2. Relevant Standards

#### a. When a material omission may support a charge of criminal fraud

In *United States v. Shields*, 844 F.3d 819 (9th Cir. 2016), a case involving conspiracy and wire fraud charges, the Ninth Circuit held that a material non-disclosure can support a wire fraud charge *only* when there exists an independent duty that has been breached by the person charged.

*Id.* at 822. In other words, for a material non-disclosure to create liability, there must be a duty to speak. One way in which such a duty may arise is when there is a relationship between persons that creates such a duty. As the Ninth Circuit explained:

> [I]t was error to not instruct the jury that it must find a relationship creating a duty to disclose before it could conclude that a material non-disclosure supports a wire fraud charge. . . . Specifically, the relationship creating a duty to disclose may be a formal fiduciary relationship, or an "informal," "trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise."

*Id.* at 823.[5]

Another way in which a duty to speak may arise that is sufficient to support a conviction for fraud for non-disclosure is in the context of half-truths. In a mail fraud case,[6] the Ninth Circuit held:

> deceitful statements of half truths or the concealment of material facts is actual fraud violative of the mail fraud statute. *Cacy v. United States*, 9 Cir., 298 F.2d 227, 229; *Williams v. United States*, 10 Cir., 368 F.2d 972, 975. In addition, as the Tenth Circuit said in *Gusow v. United States*, 10 Cir., 347 F.2d 755, 756, the deception need not be premised upon verbalized words alone. The arrangement of the words, or the circumstances in which they are used may convey the false and deceptive appearance.

*Lustiger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967); *see also United States v. Woods*, 335 F.3d 993, 1000 (9th Cir. 2003) (citing, in a mail fraud case, *Lustiger* and noting that half-truths are "generally referred to as statements"); *see generally Universal Health Servs. v. United*

---

[5] The Government argues that the jury should decide whether Defendant and an investor in Three Eagles had a "trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise" sufficient to create a duty to disclose. *See Shields,* 844 F.3d at 823. The Government, however, must first present sufficient facts from which a reasonable jury could reach that conclusion. It has not yet done so. Accordingly, this argument cannot form the basis for finding a duty to disclose.

[6] "It is well settled that cases construing the mail fraud and wire fraud statutes are applicable to either." *United States v. Shipsey*, 363 F.3d 962, 971 n.10 (9th Cir. 2004).

*States ex rel. Escobar*, --- U.S. ---, 136 S. Ct. 1989, 2000 (2016) (applying, in a civil case under the False Claims Act, the common law definition of "half-truth" and concluding that "representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations"). Thus, by voluntarily speaking a half-truth, the speaker assumes a duty to speak the full truth that is needed to make what has been said not materially misleading.

### b.  When evidence of "other acts" may be allowed under Rule 404(b)(2)

Rule 404(a) of the Federal Rules of Evidence prohibits evidence of a person's character or character trait "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). This is sometimes referred to as "propensity evidence." Similarly, Rule 404(b)(1) prohibits evidence of a crime, wrong, or other act, "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Rule 404(b)(2), however, provides that evidence of a crime, wrong, or other act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

When the Government offers evidence of "other acts," also known as "prior bad acts," under Rule 404(b)(2), the trial court must decide:

(1)      whether the "other acts" are offered for a proper purpose;

(2)      whether the evidence is relevant in light of that purpose;

(3)      whether the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, so that the evidence should be excluded under Rule 403; and

(4)      whether a limiting instruction should be given, if requested by the party against whom the evidence is offered.

*See* 1 Christopher B. Mueller and Laird C. Kirkpatrick, FEDERAL EVIDENCE § 4:29 at 743 (4th ed. 2013) (citing *Huddleston v. United States*, 485. U.S. 681 (1988).

In addition, the Ninth Circuit has developed a separate four-part test for admissibility under Rule 404(b) of evidence of prior bad acts:

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged. If the evidence meets this test under Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403.

*United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002) (citations and quotation marks omitted); *see also United States v. Plancarte-Alvarez*, 366 F.3d 1058 (9th Cir. 2004), *opinion amended on denial of reh'g*, 449 F.3d 1059 (9th Cir. 2006) (same).

### c. When evidence is "inextricably intertwined" with the crime charged

Rule 404(b) "is inapplicable, however, where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011) (citation omitted). Evidence of prior bad acts may be found to be inextricably intertwined with the crime charged when: (1) it is part of a transaction that forms the basis for the charge; or (2) the evidence is necessary to make the case comprehensible or explain the circumstances surrounding the crime. *United States v. Loftis*, 843 F.3d 1173, 1177-78 (9th Cir. 2016); *United States v, Rrapi*, 175 F.3d 742, 748-49 (9th Cir. 1999) ("Evidence is 'inextricably intertwined' if it 'constitutes a part of the transaction that serves as a basis for the criminal charge,' or 'was necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" (citation omitted)).

In addition, "[a] jury is entitled to know the circumstances and background of a criminal charge." *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (internal quotations omitted). "It cannot be expected to make its decision in a void–without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *Id.*; *see also United States v. Senffner*, 280 F.3d 755, 764-67 (7th Cir. 2002) (holding that, in mail fraud prosecution, evidence of other acts is inextricably intertwined when it: (1) completes the story of the crime on trial, (2) its absence would create a chronological or conceptual void in the story of the crime, or (3) it is so "blended or connected" that it "incidentally involve[s], explain[s] the circumstances surrounding, or tend[s] to prove any element of, the charged crime").

Under these principles, the Ninth Circuit has affirmed the admission in criminal fraud cases of other, uncharged fraudulent transactions, *Loftis*, 843 F.3d at 1177-78, and has affirmed the admission of evidence proffered to explain why a defendant took certain actions. For example, the prosecution properly introduced evidence about a defendant's prior three insured vessel losses because it explained why he could not obtain insurance under his own name and thus why he perjured himself. *United States v. DeGeorge*, 380 F.3d 1203 (9th Cir. 2004).

### 3. Analysis

#### a. 1991 Alaska Cease and Desist Order (Excluded)

At the pretrial conference on January 4, 2018, the Government conceded the exclusion of the 1991 Cease and Desist Order issued by the State of Alaska to Defendant, and the Government no longer includes that document in its Amended Exhibit List (ECF 123). Similarly, the Court previously excluded all evidence of investigations of Defendant by the State of Washington and the State of Colorado. The Court need not address these issues further.

### b. 1993 Oregon Cease and Desist Order (Reserved Pending Foundation)

In its Amended Exhibit List (ECF 123), the Government lists as Trial Ex. 9 a certified copy of a Cease and Desist Order dated March 3, 1993, issued by the State of Oregon to Defendant, among others, along with a Consent to Entry of Order signed by Defendant on March 2, 1993. Defendant argues that he had no duty to disclose this 1993 Order to any prospective investors in his Ohio gold mining project, which only began soliciting investments in 2008. The Government does not argue that anything in the 1993 Order itself imposes a duty on Defendant to disclose that Order to any future investors whom he may solicit.

Instead, at the first trial, the Government argued that the 1993 Order was relevant and admissible based on the anticipated trial testimony of Richard Gartner. In February 2011, Gartner, along with an investment pool of several friends, invested $100,000 in Three Eagles. (Trial Ex. 141.) Several months later, in late April 2011, Gartner came across the 1993 and 2003 Cease and Desist Orders as part of his "ongoing due diligence." On April 25, 2011, Gartner sent an email to Defendant, inquiring about those items. (Trial Ex. 147.) Gartner told Defendant that "I have not mentioned anything about this to any of the other investors and I will not do so unless and until you have had a chance to tell your side. Please see the links below and let me know your side of these events." *Id*. Defendant responded by email on May 2, 2011. *Id*. Among other things, Defendant responded, in relevant part: "State of Oregon matter of March 1993. Everything occurred as outline." *Id*. Defendant added: "There were NO FINES ever paid by me since these were resolved with the state but not recorded in these documents. I was not represented by an attorney." *Id*.

At the first trial, the Government argued that Defendant's email to Gartner on May 2, 2011 contains a false or misleading statement, or a "half-truth," thereby creating a duty to provide full and accurate information about the 1993 Order. According to the Government,

Defendant was sanctioned and fined by the State of Oregon in 1993. The Order itself, however, provides that "the civil penalties assessed against Respondents Insurance Designers of the Northwest, Inc. and Harry Dean Proudfoot, III, pursuant to this Order shall be *suspended* until such time as either or both of them shall engage in any activity which is regulated or prohibited by ORS Chapter 59 (the Oregon Securities Law) or ORS 645 (Commodity Transactions) as these statutes may from time to time be amended." Trial Ex. 9 at 009-008 (emphasis added). Thus, according to Defendant, he made no misrepresentation or half-truth regarding the 1993 Order in his email to Gartner. The Court agrees with Defendant.

In the Government's Response to Defendant's Motion for Reconsideration, the Government makes an additional argument. The Government refers to a PowerPoint presentation that Defendant used to solicit investors for Three Eagles. (Trial Ex. 20.) The PowerPoint presents Defendant as a successful businessman. Specifically, on page 3, Defendant describes his "successful career," in relevant part, as follows:

> He began his career in the Life Insurance Industry in 1965 and *experienced a successful career in the industry thru 1996* with production records placing him in the top ½% of producers in North America. In 1985, Harry became one of the original founders of Insurance Designer's of America, a General Agency representing 18 major companies with 770 brokers producing in the Northwest U.S. Region. *In 1996 Harry sold his interest in the agency to pursue other ventures*.

Trial Ex. 20 at 020-003 (emphasis added). As the Government explains, Defendant failed to disclose to prospective investors that his successful career included sanctions imposed in 1993 by the State of Oregon for selling unregistered securities, along with other violations. (Trial Ex. 9.) Based on the 1993 Order from the State of Oregon, Defendant's description of his "successful career in the industry thru 1996" and his explanation that in 1996 he sold his interest in the agency "to pursue other ventures" properly may be characterized as a "half-truth." The

Government is correct that the PowerPoint misleadingly presents Defendant in a very positive light. If the Government can show that the 1993 Order would have been material in 2008 to an investor's decision to invest in Three Eagles, the use of the PowerPoint created a duty to disclose that Order.

For the 1993 Order from the State of Oregon to be admissible based on the duty created by the misleading representation and half-truth contained in the PowerPoint sales presentation, the Government must establish the following foundation:

> (1)     Defendant was aware of the 1993 Order from the State of Oregon (Trial Ex. 9) at or near the time it was issued;[7]
>
> (2)     Defendant used the Three Eagles PowerPoint presentation (Trial Ex. 20) to solicit investments in Three Eagles; and
>
> (3)     A reasonable investor or prospective investor in Three Eagles would have considered the information about the 1993 Order that was omitted from the description of Defendant's "successful career" in the industry through 1996 to be material.

If the Government can lay this foundation, then evidence of the 1993 Order from the State of Oregon (Trial Ex. 9) will be admissible.

Finally, the Court has considered Defendant's argument under Rule 403 and concludes that, if a proper foundation is laid, the probative value of the evidence of the 1993 Order from the State of Oregon in conjunction with the related half-truth contained in the Three Eagles PowerPoint sales presentation describing Defendant's "successful career" in the industry through 1996 would not be substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. The Court reserves ruling on the admissibility of the 1993 Order from the State of Oregon until after a proper foundation has been laid.

---

[7] This is established by the 1993 Order itself, which Defendant signed in 1993. *See* Trial Ex. 9 at 0009-010

### c. 2003 Oregon Cease and Desist Order (Reserved Pending Foundation)

On its Amended Exhibit List (ECF 123), the Government lists as Trial Ex. 272 a certified copy of a Cease and Desist Order issued by the State of Oregon to Defendant, among others, dated November 18, 2003. Defendant objects to Trial Ex. 272 and any evidence or argument referring to the 2003 Cease and Desist Order from the State of Oregon. Defendant adds that he did not participate in the 2003 proceedings and that a default judgment was entered against him in that matter.

Although investor Gartner referred to both the 1993 and the 2003 Orders in his email to Defendant dated April 25, 2011 (Trial Ex. 147), as previously discussed, nothing in Defendant's response to Gartner is a misrepresentation or half-truth that would create a duty to disclose the 2003 Order. Also, the Government does not argue that anything in the 2003 Order creates a duty by Defendant to disclose that Order to future investors.

Instead, the Government offer two alternative and independent reasons for the admissibility of the 2003 Order (Trial Ex. 272). First, the Government argues that the 2003 Order is admissible because it relates to a material misrepresentation that created a duty to speak. Second, the Government alternatively argues that the 2003 Order is admissible for the limited purpose of showing Defendant's intent to defraud under Rule 404(b)(2).

### i. Admissibility based on a duty to speak

In 2010 and 2011, Defendant worked with Three Eagles' then-attorney Conrad Lysiak on a Private Placement Memorandum ("PPM") for Three Eagles. Defendant and attorney Lysiak exchanged several drafts of the PPM. The final PPM is dated September 1, 2011. (Trial Ex. 103.) Pages 19-22 of the PPM lists Defendant and his adult children (Laurie Vrvilo, Matthew Proudfoot, and Daniel Proudfoot) as the officers and directors of Three Eagles and describes their "Involvement in Certain Legal Proceedings." *Id*. On pages 21-22 of the PPM, the following

affirmative statement appears: "*During the past ten years*, *Harry Proudfoot*, Matthew Proudfoot, Daniel Proudfoot and Laurie Vrvilo *have not been the subject of any of the following events*: . . . (7) Was the subject of, or a party to, *any* Federal or *State* judicial or *administrative order*, judgment, decree, or finding, not subsequently reversed, suspended or vacated, *relating to an alleged violation of: i) Any Federal or State securities or commodities law or regulation . . . .*" *Id*. at 103-021 through 103-022 (emphasis added). Based on the existence of the 2003 Order from the State of Oregon, this statement in the 2011 PPM is false on its face. Moreover, according to the Government, Defendant and attorney Lysiak exchanged earlier drafts of this PPM that contained the same false statement and Defendant was aware of the existence of the 2003 Order well before those drafts were exchanged.[8]

For the 2003 Order from the State of Oregon to be admissible based on the duty created by the false representation contained in the 2011 PPM, the Government must establish the following foundation:

> (1)     Defendant was aware of the 2003 Order from the State of Oregon at a relevant point in time before he used the PPM to solicit investors for Three Eagles;
>
> (2)     Defendant received a copy of the PPM or an earlier draft that contained the false representation that during the past ten years Defendant had not been the subject of any State administrative order relating to any alleged violation of any federal or state securities law;

---

[8] As of February 28, 2010, the required "look-back" period under SEC regulations for prior regulatory actions and investigations to be disclosed in a private placement memorandum was expanded from five years to ten years. *See* 17 C.F.R. § 229.401. Defendant argues that there is no evidence that he was aware of this regulatory change in the "look-back" period from five years to ten years, when he completed and his Questionnaire for a Private Placement Memorandum and returned it to attorney Lysiak on April 27, 2010. According to Defendant, that is why he did not disclose the 2003 Order to attorney Lysiak and thus why the PPM contains this misrepresentation. Defendant also argues that the PPM was not inextricably intertwined with the alleged scheme because the PPM was created to achieve SEC regulatory compliance, rather than to be shown to any investor.

(3)     Defendant took no steps to correct that false representation;

(4)     After Defendant received a copy of the PPM or an earlier draft that contained the relevant false representation, Defendant (or a co-conspirator) showed or otherwise provided a copy of the PPM to an investor or prospective investor in Three Eagles; and

(5)     A reasonable investor or prospective investor in Three Eagles would have considered the false statement in the PPM and the related omitted information about the 2003 Order from the State of Oregon to be material.

If the Government can lay this foundation, then evidence of the PPM (Trial Ex. 103), its false statement on pages 20-22, and the 2003 Order from the State of Oregon (Trial Ex. 272) will be admissible.

### ii.  Alternative basis of admissibility under Rule 404(b)(2)

Alternatively, evidence of the 2003 Order from the State of Oregon may be admissible under Rule 404(b)(2) for the limited purpose of showing Defendant's intent to defraud if the Government can establish the five foundational elements described above.

### iii.  Rule 403

The Court has considered Defendant's argument under Rule 403 and concludes that, if a proper foundation is laid, the probative value of the evidence of the 2003 Order from the State of Oregon in conjunction with the related false statement contained in the 2011 PPM would not be substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. The Court reserves ruling on the admissibility of the 2003 Order from the State of Oregon until after a proper foundation has been laid.

### d.  2010 Matthew Proudfoot bankruptcy (Reserved Pending Foundation)

On August 31, 2010, Matthew Proudfoot and his wife filed for personal bankruptcy in the Eastern District of Washington. (Trial Ex. 11.) As discussed above, the final PPM is dated September 1, 2011. (Trial Ex. 103.) Pages 19-22 of the PPM lists Defendant and his adult

children Laurie Vrvilo, Matthew Proudfoot, and Daniel Proudfoot as the officers and directors of Three Eagles and describes their "Involvement in Certain Legal Proceedings. *Id*. On page 21 of the PPM, the following statement appears: "*During the past ten years*, Harry Proudfoot, *Matthew Proudfoot*, Daniel Proudfoot and Laurie Vrvilo *have not been the subject of any of the following events*: . . . (1) *A petition under the Federal bankruptcy laws . . . was filed by . . . such person . . . .*" *Id*. at 103-021 (emphasis added). Based on the 2010 personal bankruptcy filing by Matthew Proudfoot, this statement in the 2011 PPM is false on its face. The Government represents that it intends to call one or more investor witnesses who will state that this information would have been relevant (or material) to their decision to invest.

Defendant moves to exclude all evidence relating to Matthew Proudfoot's personal bankruptcy. The Court will treat the evidence of Matthew Proudfoot's bankruptcy filing in August 2010 in a similar fashion to the evidence of the 2003 Order from the State of Oregon relating to Defendant.

### i. Admissibility based on a duty to speak

For the evidence of Matthew Proudfoot's August 2010 personal bankruptcy to be admissible based on the duty created by the false representation contained in the 2011 PPM, the Government must establish the following foundation:

> (1) Defendant was aware of the August 2010 personal bankruptcy filing by Matthew Proudfoot;
>
> (2) Defendant received a copy of the PPM or an earlier draft that contained the false representation that no officer or director of Three Eagles had filed a petition under the federal bankruptcy laws in the past ten years;
>
> (3) Defendant took no steps to correct that false representation;
>
> (4) After Defendant received a copy of the PPM or an earlier draft that contained the relevant false representation, Defendant or

a co-conspirator showed or otherwise provided a copy of the PPM
to an investor or prospective investor in Three Eagles; and

(5)      A reasonable investor or prospective investor in Three
Eagles would have considered the false statement in the PPM and
the related omitted information about Matthew Proudfoot's 2010
bankruptcy filing to be material.

If the Government can lay this foundation, then evidence of the PPM (Trial Ex. 103), its false

statement on page 21, and Matthew Proudfoot's 2010 bankruptcy filing (Trial Ex. 11) will be

admissible.

### ii.  Alternative basis of admissibility under Rule 404(b)(2)

Alternatively, evidence of Matthew Proudfoot's bankruptcy filing in August 2010 may be

admissible under Rule 404(b)(2) for the limited purpose of showing Defendant's intent to

defraud if the Government can establish the five foundational elements described above.

### iii.  Rule 403

The Court has considered Defendant's argument under Rule 403 and concludes that, if a

proper foundation is laid, the probative value of the evidence of Matthew Proudfoot's 2010

bankruptcy filing in conjunction with the related false statement contained in the 2011 PPM

would not be substantially outweighed by a danger of unfair prejudice, confusing the issues, or

misleading the jury. The Court reserves ruling on the admissibility of Matthew Proudfoot's 2010

bankruptcy filing until after a proper foundation has been laid.

### e.  2013 Oregon Cease and Desist Order and Related Investigations (Reserved Pending Foundation)

On its Amended Exhibit List (ECF 123), the Government lists as Trial Ex. 10 a certified

copy of a Cease and Desist Order issued by the State of Oregon to Defendant, among others,

dated June 17, 2013. This Order relates to, among other things, Defendant apparently selling

unregistered securities from 2004-2007 for an unrelated gold mining operation in Canada.

According to the Government, Defendant disclosed to at least one investor in Three Eagles (Mr. Alan Trumpetta) Defendant's gold mining activities in Canada from 2004-2007 and the related investigations as part of Defendant's efforts to solicit Mr. Trumpetta to invest in Three Eagles. The Government further contends that although Defendant disclosed this information to Mr. Trumpetta, Defendant did not disclose this information to other investors in Three Eagles. The Government argues that it should be allowed to present evidence to the jury showing that sometimes Defendant disclosed this information to investors in Three Eagles and sometimes he did not. The Court agrees. The Government, however, may not present evidence of either the 2013 final Order from Oregon or an earlier tentative Order in 2011 from Oregon, unless the Government shows that either of those items also were disclosed to some investors in Three Eagles but not others.[9]

## CONCLUSION

The Court resolves the parties' respective motions *in limine* and motions for reconsideration (ECF 78, ECF 126, and ECF 131) as stated in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 28th day of November, 2018.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge

_____

[9] The Court rejects the Government's alternative argument that the Three Eagles PowerPoint sales presentation, discussed previously, is enough to permit evidence of investigations that had not yet reached the stage of final order. The mere existence of an investigation, without more, does not show that the background description of Defendant in the PowerPoint was misleading.